## PORTLAND GENERAL ELECTRIC CO. *v.*
## STATE TAX COMMISSION

Mr. Alfred H. Stoloff, Portland, Oregon, argued the cause for plaintiff.

Mr. Alfred B. Thomas, Assistant Attorney General, Salem, Oregon, argued the cause for defendant.

Decision for plaintiff rendered May 6, 1966.

EDWARD H. HOWELL, Judge.

This is a companion case to *Portland General Electric Company v. State Tax Commission,* 2 OTR 222, decided November 1, 1965, except that it involves a subsequent tax year, 1965.

■ The facts which are set forth in the previous opinion will not be repeated in detail. Generally, PGE contends that its interest in lands belonging to the United States and to the Warm Springs Indian tribe

which were flooded by the construction of the Round Butte and Pelton hydroelectric projects are not taxable by the defendant and, if they are, the valuations established by the commission do not reflect the true cash value of plaintiff's interest. This court held, in the prior case, that PGE's interest was subject to ad valorem taxation but that certain reductions should be made in the valuations assigned by the defendant.

Several different and some new issues are involved in the present case.

The defendant now contends that PGE's interest in the lands of the United States under the FPC license has a true cash value of $60 per acre as of January 1, 1965, as compared to the $10 per acre assigned by the defendant for the prior year. While the defendant's appraiser testified that some investigation of purchases by PGE of fee or lesser interests in the area justified the raise from the $10 true cash value in 1964 to the $60 used in 1965, the increase appeared to be based upon information from the Federal Power Commission concerning annual charges to Oregon licensees. The latter commission, in response to an inquiry from the defendant, stated that a $60 per acre value had been assigned to projects under FPC licenses in Oregon. This was based on an annual charge of $2.40 per acre rental for the lands involved under the FPC license. However, the letter also stated that no annual charges had been determined for the Pelton and Round Butte projects. It is conceded by the parties that PGE has not paid any annual charges to the federal government for its interest in the federal lands under the FPC license. There appears to be no valid reason why the $10 per acre true cash value assigned by the defendant to PGE's interest in the federal lands for 1964 should be changed for 1965.

In 1965, for the first time, the defendant has assigned a "token value" for power site value or water flow value. This value was described by defendant's appraiser as the value "that's attributable to the very location of the dam itself.  *  *  *  the axis of the dam *  *  *." He also stated:

" *  *  * To indicate that there is a prime and critical location in developing hydro facilities and there are only so many through a canyon and this thing is of particular value and it's more than just the value of $10 per acre land or whatever the value might be assigned to the land. The company paid the Indian tribe for something special and it is our opinion that this is where the value lies is in the permission to operate, construct and maintain a hydroelectric facility. And this is what we refer to as the power site or dam site value."

In determining the value of the property for a power site the defendant used ten cents per kilowatt capacity and assigned five cents per kilowatt to represent that part of the dam on the federal lands. The defendant's witness said:

" *  *  * it was the opinion of the Commission that there should be some recognition for the particular use that the electric company has in the dam site itself and this follows the testimony in the 1964 case that the dam site is where the value lies and as a token valuation for this particular item of property which the company enjoys and has been licensed by the United States to possess for the term of this license, we adopted a five cent —really a ten cent per kilowatt capacity for the site itself. But here where they're already occupying a half purportedly belonging to the Indians but rather than to put ten cents here, we just put five cents to reflect the U. S. side because the other five cents or whatever increment there is that be-

longs to the Indians would be in Item No. 3; namely, the present worth of all the future payments. * * *"

■ The defendant has not cited any authorities allowing it to assess an ad valorem tax on the property, or PGE's interest therein, for its value as a power site. Assuming, arguendo, that power site value is a compensable item to be considered in a condemnation case, the question still remains whether the Deschutes River is a navigable or nonnavigable stream, the effect, if any, of the 1855 treaty between the United States and the tribes of Middle Oregon, which include the Warm Springs Indians, whether a private owner is entitled to compensation for a power site and the effect of the FPC license giving PGE the right to construct the hydroelectric facilities. None of these matters has been briefed but it is not necessary for the court to decide in this case whether a power site has a taxable value. As previously mentioned, the defendant in this 1965 case for the first time has assigned what it calls a "token value" to the power sites as such and valued them at $18,000. With certain exceptions not material here, all real and personal property is to be assessed at its true cash value. There is no provision in the law allowing the defendant to assign a "token value" to property. If this were permissible the defendant could assign "token values" to any property without regard to the taxing statutes.

The value of PGE's interest in the inundated Indian lands is again before the court. In 1965, as in 1964, the defendant is valuing PGE's interest in the inundated Indian lands by using an income approach considering the present value of PGE's annual payment to the Indians over the life of the agreement. The plaintiff's appraiser had the following to say about the de-

fendant's method of valuing PGE's interest in the Indian lands:

"Q. In your opinion, Mr. McTague, is the Commission's approach to value a proper one?

A. No, I don't believe it is.

Q. Can you explain?

A. Yes. I agree with the Commission that a going concern may be valued by capitalization of income. But the Commission is not capitalizing income. They are capitalizing expense. They are capitalizing, perhaps, income to the Indians or to a specific owner, but certainly not the income to PGE. And the value to PGE can only be measured by the income to PGE. It's not logical to base a valuation on an expense or cost to the person that will be subject to that valuation. As a matter of fact that, in combination with the Commission's viewpoint that this is an added value, something that doesn't appear on the company's books but is a value to them, can lead to somewhat ridiculous results if carried to the extreme. If the company actually did obtain some added value from incurring an expense you might say that they should go out and hire the worst negotiator in the world because the more he caused them to pay, the more value they'd get. * * *"

As the benefits to PGE from the inundated Indian lands are the same as its benefits from the inundated federal lands, PGE's interest in the inundated Indian lands is set at $10.00 per acre as it was for the year 1964.

The taxability of the Cove hydroelectric plant is also before this court again for 1965. The defendant values the inundated Cove plant using an income approach. The Cove hydroelectric plant was destroyed by the construction of the Round Butte facility. This court in the prior case found that the Cove plant was

not taxable for the reasons mentioned and sees no reason for changing that decision.

In the prior case the parties stipulated to a true cash value of $2.00 per acre for PGE's interest in an easement for the operation of power transmission lines over the Indian lands. The defendant now contends that PGE's interest should be valued at $10.00 per acre, based on a capitalization of payments to the Indians. The plaintiff's appraiser testified to a value of $2.00 per acre based on the difference between the value of the fee land without the easement and the value of the fee land with the restrictions contained in the easement. The true cash value of PGE's interest in the easement is set as $2.00 per acre.

The last item in dispute and which was not involved in the 1964 case is the value of PGE's interest in an easement to certain property called the Charlie Jackson lands. These lands are located on the Warm Springs Indian reservation and PGE used the easement to build part of its hydroelectric facilities, to inundate part of the land and to construct access roads. Jackson was to receive $500 per month during the term of the easement. The defendant used the income approach by capitalizing the payments paid by PGE during the life of this agreement. The plaintiff offered testimony that the value of the fee was approximately $495 per acre based on comparable sales in the area. The testimony of the plaintiff's witness would indicate that the Charlie Jackson land is less rugged and precipitous than the inundated Indian lands. The interest of PGE in the Charlie Jackson land is set at $100 per acre.

No costs to either party.